## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

KEITH J. MAGILL,

                Plaintiff,

       v.

ELYSIAN GLOBAL CORPORATION,
LEO AMERI, JESSE BRANDENBURG,
and NADINE DOMINIK,

             Defendants.

---

1:20-cv-06742-NLH-AMD

**OPINION**

**APPEARANCES**:

WALTER TOTO
317 FORSGATE DRIVE
MONROE TOWNSHIP, NJ 08831

    *On behalf of Plaintiff*

LOUIS A. RUSSO
RUSSO LAW LLC
276 FIFTH AVENUE
SUITE 704
NEW YORK, NY 10001

    *On behalf of Defendants*

**HILLMAN**, District Judge

    This case concerns Plaintiff's claims for unpaid compensation for work related to an initial coin offering ("ICO"), which is the sale of virtual coins or tokens - cryptocurrency - to fund the development of an e-commerce platform.  Presently before the Court is the motion of Defendants to dismiss Plaintiff's complaint on several bases,

including lack of personal jurisdiction, improper venue, and a valid arbitration provision.  For the reasons expressed below, Defendants' motion will be granted, and the action will be dismissed for lack of personal jurisdiction.

## BACKGROUND

Plaintiff, Keith J. Magill, filed the instant action[1] for breach of contract and other related claims against his former

---

[1]  On June 2, 2020, Plaintiff filed his original complaint.  On September 19, 2020, Defendants moved to dismiss Plaintiff's original complaint.  In response, on October 5, 2020, Plaintiff filed an amended complaint.  On October 19, 2020, Defendants moved to dismiss the amended complaint, arguing that the amendments did not cure the defects in the original complaint, particularly with regard to personal jurisdiction, and Defendants incorporated the arguments asserted in their first motion to dismiss in their second motion to dismiss the amended complaint.  The Court will consider Plaintiff's amended complaint, Docket No. 8, as the operative pleading from which the Court recites the background facts as alleged by Plaintiff.  See Garrett v. Wexford Health, 938 F.3d 69, 82 (3d Cir. 2019) ("[A]n amended pleading supersedes the original pleading and renders the original pleading a nullity.").  Additionally, because the Court will dismiss Plaintiff's action for lack of personal jurisdiction, a basis for dismissal argued in Defendants' first motion to dismiss, the Court will consider Defendants' first motion to dismiss to be directed at the amended complaint, thus rendering the second motion to be denied as duplicative.  See Brown v. Camden City School District, 2020 WL 6055070, at *4 (D.N.J. 2020) ("[A] defendant should not be 'required to file a new motion to dismiss simply because an amended pleading was introduced while its motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.'") (citing 6 Wright, Miller & Kane, Federal Practice & Procedure § 1476 at 558 (2d ed. 1990); Jordan v. City of Phila., 66 F. Supp. 2d 638, 640 n.1 (E.D. Pa. 1999)); Wilson v. Jacobs, 2014 WL 346588, at *1 (D.N.J. 2014) (quoting 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal

employer, Defendant Elysian Global Corporation, and Elysian's
principals, Defendants Leo Ameri, CEO, Jesse Brandenburg, CFO,
and Nadine Dominik, corporate secretary.[2]  Beginning in October
2017, Ameri contacted Plaintiff through Facebook Messenger
asking him to invite his "crypto buds" to a Facebook group
called "Cryptocurrency Mastermind."  In a series of
conversations through Facebook messenger, Ameri asked Plaintiff
to join a team of eight individuals to participate in an "ICO
project," which stands for "initial coin offering," and is
almost identical to an initial public offering ("IPO"), but
depending on the circumstances of the offering may be outside of
the purview of the Securities and Exchange Commission ("SEC").[3]

---

Practice and Procedure § 1476 (3d ed. 2012)) (explaining that
even though the defendants' motion to dismiss was addressed to
the plaintiff's original complaint, "the court simply may
consider the motion as being addressed to the amended
pleading").

[2] Previously, along with two other employees of Defendants,
Plaintiff filed an almost identical complaint in the District of
Massachusetts, which complaint was dismissed for lack of
personal jurisdiction over Defendants.

[3]  The SEC explains:

> Virtual coins or tokens are created and disseminated
using distributed ledger or blockchain technology.  A
blockchain is an electronic distributed ledger or list of
entries – much like a stock ledger – that is maintained by
various participants in a network of computers.
Blockchains use cryptography to process and verify
transactions on the ledger, providing comfort to users and
potential users of the blockchain that entries are secure.
Some examples of blockchain are the Bitcoin and Ethereum

Through additional conversations online via Slack,[4] Ameri

offered Plaintiff $200,000 worth of Ethereum[5] if the ICO was

successful in exchange for Plaintiff doing business development

for Defendants.  Plaintiff agreed and began working for

---

blockchains, which are used to create and track
transactions in bitcoin and ether, respectively.  A virtual
currency is a digital representation of value that can be
digitally traded and functions as a medium of exchange,
unit of account, or store of value.  Virtual tokens or
coins may represent other rights as well.

Recently promoters have been selling virtual coins or
tokens in ICOs.  Purchasers may use fiat currency (e.g.,
U.S. dollars) or virtual currencies to buy these virtual
coins or tokens.  Promoters may tell purchasers that the
capital raised from the sales will be used to fund
development of a digital platform, software, or other
projects and that the virtual tokens or coins may be used
to access the platform, use the software, or otherwise
participate in the project.  Some promoters and initial
sellers may lead buyers of the virtual coins or tokens to
expect a return on their investment or to participate in a
share of the returns provided by the project.  After they
are issued, the virtual coins or tokens may be resold to
others in a secondary market on virtual currency exchanges
or other platforms.  Depending on the facts and
circumstances of each individual ICO, the virtual coins or
tokens that are offered or sold may be securities.  If they
are securities, the offer and sale of these virtual coins
or tokens in an ICO are subject to the federal securities
laws.

See https://www.sec.gov/oiea/investor-alerts-and-
bulletins/ib_coinofferings.

[4] Slack offers internet relay chat ("IRC") features, including
chat rooms (channels) organized by topic, private groups, and
direct messaging.  https://en.wikipedia.org/wiki/Slack_(software).

[5] See, *supra*, note 2 for an explanation of Ethereum.

Defendants approximately 50 hours a week.  One of Plaintiff's primary responsibilities was speaking with potential investors all over the world to convince them to purchase Elysian's ELY tokens during the ICO.  Plaintiff also worked on partnerships, investments, marketing materials, and graphic design.  Plaintiff managed Defendants' social media, including Facebook, Twitter, and Telegram.[6]

During his employment, Plaintiff repeatedly asked for a written employment contract, but he was rebuffed for numerous reasons.  Defendants' ICO occurred between April 2018 and July 2018, and raised $7 million.  Defendants never paid Plaintiff the agreed-upon $200,000 worth of Ethereum.  Plaintiff terminated his employment with Defendants in July 2018.

On September 7, 2018, Defendants sent Plaintiff a Token Compensation Agreement.  In that agreement, Plaintiff was "not allowed to talk publicly about Elysian to anyone after the signing of this contract.  This also includes screenshots of private chats."  The agreement provided that if Plaintiff did

---

[6] "Telegram provides end-to-end encrypted voice and video calls and optional end-to-end encrypted 'secret' chats.  Cloud chats and groups are encrypted between the app and the server, so that ISPs and other third-parties on the network can't access data, but the Telegram server is in possession of the decryption key. Users can send text and voice messages, animated stickers, make voice and video calls, and share an unlimited number of images, documents (2 GB per file), user locations, contacts, and music." https://en.wikipedia.org/wiki/Telegram_(software).

not violate this one provision, he would be paid an additional $175,000 in ELY tokens.  This agreement also contained an arbitration provision.  Plaintiff claims that this agreement was separate from his oral employment agreement with Defendants and the arbitration provision only applies to the non-disclosure provision.

To date, Plaintiff has not been paid for his work on the Elysian ICO and has only been paid $12,500 of ELY Tokens pursuant to the token agreement.  As a result, Plaintiff claims that Defendants' actions breached their employment contract and violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.  Plaintiff also seeks relief under the legal theories of quantum meruit, unjust enrichment, fraudulent inducement, and "accounts stated."

Defendants have moved to dismiss Plaintiff's complaint for lack of personal jurisdiction over them and improper venue. Defendants alternatively argue that Plaintiff's complaint must be dismissed because all of his claims are subject to the arbitration provision in the Token Compensation Agreement, and they otherwise fail to meet the proper pleading standards. Plaintiff has opposed Defendants' motion, arguing that Defendants purposefully availed themselves to New Jersey by contracting and communicating with Plaintiff, who is a New Jersey citizen and lived in New Jersey while he worked for

Defendants.  Plaintiff further argues that the arbitration provision does not apply to his employment dispute, and he has properly pleaded his claims.

## DISCUSSION

### A.    Subject Matter Jurisdiction

This Court has jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's state law claims.

### B.    Analysis

Because the issue of whether this Court may exercise personal jurisdiction over Defendants is dispositive to the viability of the entire suit, that issue must be addressed first.  Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant.  "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).  In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir.), cert. denied, 506 U.S. 817 (1992)

(citations omitted).[7]

A defendant is subject to the jurisdiction of a United States district court if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(k)(1)(A). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004)(citations omitted). The New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citing DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981)).

Under the Due Process clause, the exercise of personal

---

[7] There is a "significant procedural distinction" between a motion pursuant to Rule 12(b)(2) and a motion pursuant to Rule 12(b)(6). Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984). "A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether *in personam* jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." Id. (citation omitted).

jurisdiction over a non-resident defendant is appropriate when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)), cited in Ford Motor Company v. Montana Eighth Judicial District Court, --- S. Ct. ---, 2021 WL 1132515, at *4 (U.S. March 25, 2021) (stating that International Shoe is the "canonical decision in this area").

A defendant establishes minimum contacts by "'purposefully avail[ing] itself of the privilege of conducting activities within the forum State,'" thereby invoking "'the benefits and protections of [the forum State's] laws.'" Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of California, 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). This "purposeful availment" requirement assures that the defendant could reasonably anticipate being haled into court in the forum and is not haled into a forum as a result of "random," "fortuitous" or "attenuated" contacts with the forum state. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp., 471 U.S. at 472, 475 (internal citations omitted).

In deciding whether a defendant's contacts with a forum are

9

sufficient to confer personal jurisdiction over that party, the Court must consider whether such contacts are related to or arise out of the cause of action at issue in the case.  The Court may exercise specific personal jurisdiction over a defendant where the cause of action is related to or arises out of activities by the defendant that took place within the forum state.  <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 n.8 (1984).  If the cause of action has no relationship to a defendant's contacts with a forum state, the Court may nonetheless exercise general personal jurisdiction if the defendant has conducted "continuous and systematic" business activities in the forum state.[8]  <u>Id.</u> at 416.

Once the Court determines that the defendant has minimum contacts with the forum state, it must also consider whether the assertion of personal jurisdiction over the defendant "comport[s] with 'fair play and substantial justice'" to satisfy

---

[8] "'A corporation that operates in many places can scarcely be deemed at home in all of them.'"  <u>Malik v. Cabot Oil & Gas Corporation</u>, 710 F. App'x 561, 564 (3d Cir. 2017) (quoting <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 139 n.20 (2014)) (further explaining that "[o]therwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States").  As the Third Circuit has recognized, it is "'incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'"  <u>Malik</u>, 710 F. App'x at 564 (quoting <u>Chavez v. Dole Food Company, Inc.</u>, 836 F.3d 205, 223 (3d Cir. 2016) (quoting <u>Monkton Ins. Servs., Ltd. v. Ritter</u>, 768 F.3d 429, 432 (5th Cir. 2014)).

the due process test.  Burger King Corp., 471 U.S. at 476
(quoting Int'l Shoe, 326 U.S. at 320).  In this regard, it must
be reasonable to require the defendant to litigate the suit in
the forum state, and a court may consider the following factors
to determine reasonableness: the burden on the defendant, the
forum state's interest in adjudicating the dispute, the
plaintiff's interest in obtaining convenient and effective
relief, the interstate judicial system's interest in obtaining
an efficient resolution of controversies, and the shared
interest of the several States in furthering fundamental
substantive social policies.  Id. at 477 (citing World Wide
Volkswagen, 444 U.S. at 292).

In the case of an intentional tort, the "effects test" is
applied.[9]  The Calder "effects test" requires the plaintiff to
show the following:

(1) The defendant committed an intentional tort;
(2) The plaintiff felt the brunt of the harm in the forum
such that the forum can be said to be the focal point of
the harm suffered by the plaintiff as a result of that
tort;
(3) The defendant expressly aimed his tortious conduct at
the forum such that the forum can be said to be the focal
point of the tortious activity.

---

[9] Defendants argue that the Calder test is applicable because of
Plaintiff's fraudulent inducement count against them.  Plaintiff
contests that the Calder test applies, but even if it did,
Plaintiff argues that the elements are satisfied.  As discussed
below, even if the Calder test were to apply, the Court finds
that Defendants did not expressly aim their alleged tortious
conduct at New Jersey such that New Jersey could be considered
the focal point of that alleged tortious activity.

IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998) (discussing Calder v. Jones, 465 U.S. 783 (1984))). "[I]n order to make out the third prong of this test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id.

In this case, Defendants argue that neither specific nor general jurisdiction may be exercised over them.[10]  Defendants state that Elysian is a Belize corporation, incorporated in May 2018, and is located in Belize City, Belize.  Defendants explain that Elysian is an internet company that creates and implements an e-commerce platform using blockchain technology.  Defendants

---

[10] Plaintiff's complaint avers that Ameri resides out of the country, but formerly lived in Los Angeles, California. Brandenburg and Dominik reside in Scottsdale, Arizona.  Other than their position as principals of Elysian, Plaintiff has not alleged claims against these Defendants separate from those alleged against Elysian.  See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2011) (explaining that the "corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status.").  Even if he did, however, Plaintiff argues the same basis for personal jurisdiction over Elysian as to the individual Defendants.  Because the Court finds that personal jurisdiction is lacking over Elysian, the same analysis requires the finding that personal jurisdiction is lacking over the individual defendants as well.  For ease of reference, the Court will refer to Defendants collectively.

aver that Elysian is not registered to do business in New
Jersey, it does not have an office in New Jersey, it does not
solicit business in New Jersey, it does not have any employees
in New Jersey, it has never paid any tax in New Jersey, it has
never owned or leased real property in New Jersey, and it does
not have a mailing address, telephone number, or bank account in
New Jersey.  Additionally, none of the Defendants and no one
from Elysian has ever entered New Jersey in order to perform
business-related activities on behalf of Elysian.

Defendants construe Plaintiff as an independent contractor
who performed work on his own schedule.  Defendants point out
that Plaintiff traveled to California on one occasion to meet
with Defendants about Elysian, and most of their other
communications occurred through internet platforms.  Defendants
argue that Plaintiff living in New Jersey is merely happenstance
because nothing in the parties' relationship had anything to do
with New Jersey.

Plaintiff, who is a citizen of New Jersey and resided in
New Jersey during his tenure with Defendants, argues that
Defendants knew they were contracting with a person who lives in
New Jersey, and all the work which he performed for Defendants
and for which he seeks the compensation he is owed, was
performed in New Jersey at their direction.  Thus, Plaintiff
contends that Defendants purposefully availed themselves to New

Jersey by virtue of employing and communicating with Plaintiff in New Jersey.

The Court finds that Plaintiff has not met his burden of showing that Defendants had the requisite contacts with New Jersey to exercise personal jurisdiction over them.  As a primary matter, Plaintiff does not argue that personal jurisdiction may be premised on general jurisdiction.  Thus, the focus must be on Defendants' activities within New Jersey or were directed to New Jersey that serve the basis for Plaintiff's claims against Defendants.  Plaintiff hinges personal jurisdiction over Defendants on two main facts: (1) Plaintiff's New Jersey residence, and (2) that Defendants communicated and contracted with Plaintiff who they knew lived in New Jersey. These contacts are not enough under the circumstances of this case.

The "fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).  "A contract may provide a basis for the exercise of personal jurisdiction that meets due process standards, but a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'" Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482

(3d Cir. 1993) (quoting Burger King, 471 U.S. at 478).  In

deciding whether to exercise personal jurisdiction in a breach

of contract dispute, a district court must consider "the

totality of the circumstances, including the location and

character of the contract negotiations, the terms of the

contract, and the parties' actual course of dealing."  Remick v.

Manfredy, 238 F.3d 248, 256 (3d Cir. 2001).

    With regard to the other circumstances beyond the formation

of the purported employment contract itself, such as the

parties' course of dealing, Defendants contend that Plaintiff

worked independently of his own volition.  But even when

accepting as true Plaintiff's claim that Defendants controlled

Plaintiff's day-to-day activities, such actions did not result

in Defendants' contact with New Jersey in any meaningful way.

Plaintiff alleges that from his New Jersey home he communicated

with Defendants and potential investors all over the world to

invest in a virtual ICO for an internet company based in Belize.

Other than New Jersey being part of "the world," nothing in

those communications implicated any specific interest of New

Jersey.  See Isaacs v. Arizona Bd. of Regents, 608 F. App'x 70,

74 (3d Cir. 2015) (quoting Burger King, 471 U.S. at 475)

(quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958) (explaining

that to exercise personal jurisdiction over a non-forum

defendant, the plaintiff must show "some act by which the

defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws")); see also Ford Motor Company, --- S. St. ---, 2021 WL 1132515, at *4 (citing Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty., 582 U.S. ----, ----, 137 S. Ct. 1773, 1780 (2017) (other citation omitted)) ("[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'").

Plaintiff argues that New Jersey has an interest in protecting its citizens as employees who work for out-of-state employers.  To support that proposition, Plaintiff cites to Chadwick v. St. James Smokehouse, Inc., 2015 WL 1399121, at *1 (D.N.J. 2015).  In Chadwick, a New Jersey citizen worked from her home as a fish buyer for a smoked salmon manufacturer located in Florida.  The plaintiff would engage distributors of salmon from Europe and South America to procure salmon for her employer's business.  The plaintiff claimed she was wrongfully discharged when she questioned her employer's practice of labeling lesser quality salmon as higher quality salmon in its smoked salmon products.  The plaintiff brought suit in New Jersey district court against her employer and the company's owner for the defendants' alleged violation of New Jersey's

16

Conscientious Employee Protection Act and for wrongful discharge, and the defendants moved to dismiss for lack of personal jurisdiction.

The court found that the exercise of personal jurisdiction over the Florida defendants was proper. The court noted in its "fair play and substantial justice" analysis that even though Florida would be a more convenient forum for the defendants, New Jersey "has a strong interest in protecting its residents from retaliatory actions," and "[t]his need for protection is all the more true for New Jersey citizens working remotely for out-of-state employers." Chadwick, 2015 WL 1399121 at *6 (citation omitted).

Plaintiff in this case focuses on that part of the decision in Chadwick, but the court there did not solely rest its holding on that observation. Earlier in the decision, the Chadwick court found:

> Defendants have many contacts with New Jersey demonstrating that they have purposefully availed themselves of the privileges of doing business there, and the instant case arises out of one of those contacts.
>
> St. James has on numerous occasions, done business with the following New Jersey businesses:
>
> • Cold Spring Fish and Supply (Cape May, New Jersey)
> • Madison Seafood, Inc. (Newark, New Jersey)
> • P & G Trading Co Inc. (Trenton, New Jersey)
> • Metropolitan Seafood NJ (Lebanon, New Jersey)
> • Wegman's (seven locations in New Jersey)
> • Whole Foods (twelve locations in New Jersey)

17

> Maher even admits that he once had to appear in a small
> claims proceeding in New Jersey on behalf of St. James in
> order to resolve an unpaid debt with a New Jersey customer.
>
> Most critically, Defendants "purposefully availed"
> themselves of the New Jersey forum when they hired
> Plaintiff to be St. James's principal buyer and
> continuously relied on Plaintiff to perform essential
> functions of its business from a remote office located in
> New Jersey.  In the course of their dealings with
> Plaintiff, St. James and Maher offered to purchase and ship
> St. James's office equipment to Plaintiff in New Jersey,
> and they engaged in continuous business phone and email
> interactions with Plaintiff for almost two years.
> Moreover, Maher made the phone call to the forum state to
> terminate Plaintiff.

Chadwick, 2015 WL 1399121, at *4.  The Chadwick court further

noted that New Jersey also had an interest in protecting its

consumers from the allegedly mislabeled fish that the defendants

sold in New Jersey.  Id. at *6.

This case is very different from Chadwick.  Plaintiff's

physical location in New Jersey is the only factor that connects

this dispute to New Jersey.  Plaintiff's claims against

Defendants would be identical if he lived anywhere else in the

world.  All of Plaintiff's work and the entire nature of

Defendants' business was performed online with world-wide scope.

The only in-person connection between Plaintiff and Defendants

occurred when Plaintiff traveled to Los Angeles, California to

meet with Defendants.

As this Court has observed in a case where a New Jersey

plaintiff filed suit against an Alabama company for breach of a

contract to purchase reclaimed coal at a defunct Mississippi

power plant:

> [I]n this day and age, those communications [between the
> plaintiff and defendant] could have been with someone
> physically located anywhere in the world.  That
> negotiations occurred between the parties via email and
> telephone is not only not unusual but expected.  So too
> would it be reasonable to assume, as actually happened
> here, that given the ubiquitous tools of the internet,
> negotiations over a substantial proposal like his one would
> span a dozen or more email exchanges and inspire a like
> number of telephone calls with ease.  But these are
> communications not so much to New Jersey as they are into
> the electronic ether.  And if this is how contracts are
> negotiated and if those contacts are deemed to satisfy the
> minimum contacts requirement, then every contract
> negotiated by email and telephone would justify personal
> jurisdiction over a non-forum defendant.  And yet that is
> clearly not the law.

Exporting Commodities International, LLC v. Southern Minerals

Processing, LLC, 2017 WL 5513682, *8-*9 (D.N.J. 2017) (citing

Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products

Co., 75 F.3d 147, 152 (3d Cir. 1996)).

This case is literally about the "electronic ether" and a

dispute over "Ethereum."  The virtual nature of Plaintiff's

dispute does not leave him without a brick and mortar forum in

which to bring his claims against Defendants, but New Jersey is

not that forum.

In short, there is no indication that Defendants availed

themselves of the privileges of conducting business in New

Jersey, and New Jersey has little interest in this case.  Thus,

the Court finds that the exercise of personal jurisdiction over

Defendants in this Court does not satisfy the requirements of
due process, because Plaintiff has not established that
Defendants have sufficient contacts to New Jersey, or that
Defendants' presence in this Court would comport with fair play
and substantial justice.  Therefore, the action must be
dismissed for lack of personal jurisdiction over Defendants.[11]

     At this point, the Court must decide whether to dismiss
Plaintiff's complaint or transfer it to another court that can
exercise personal jurisdiction over Defendants.  The applicable
statutory provision is 28 U.S.C. § 1631, which governs transfer
when there is "a want of jurisdiction."  See Chavez v. Dole Food
Company, Inc., 836 F.3d 205, 224 (3d Cir. 2016) (explaining that
where a court determines that personal jurisdiction over the
defendants is lacking, the determination of whether to dismiss
or transfer is governed by 28 U.S.C. § 1631 and not 28 U.S.C. §
1406(a), which concerns improper venue).  Section 1631 provides
in relevant part:

     [Where a] court finds that there is a want of jurisdiction,
     the court shall, if it is in the interest of justice,
     transfer such action or appeal to any other such court . .

---

[11] Because the Court will dismiss Plaintiff's complaint for lack
of personal jurisdiction over Defendants, the Court need not
consider Defendants' other arguments for dismissal – improper
venue, a valid arbitration clause, and failure to comply with
the proper pleading standards.  Similarly, the Court will not
consider Defendants' request for the reimbursement of attorney's
fees and costs associated with their defense of this action
because Defendants assert that request in the context of
dismissing the action in favor of arbitration.

> . in which the action or appeal could have been brought at
> the time it was filed or noticed, and the action or appeal
> shall proceed as if it had been filed in or noticed for the
> court to which it is transferred on the date upon which it
> was actually filed in or noticed for the court from which
> it is transferred.

28 U.S.C. § 1631 ("Transfer to cure want of jurisdiction").

In opposition to Defendants' motion to dismiss, Plaintiff argues that Defendants have not identified a different forum in which Plaintiff may maintain his claims against Defendants. It is not Defendants' obligation to do so in seeking to dismiss Plaintiff's claims for lack of personal jurisdiction. O'Connor, 496 F.3d at 316 ("Once challenged, the plaintiff bears the burden of establishing personal jurisdiction."); cf. Onishi v. Chapleau, 2021 WL 651161, at *2 (D.N.J. 2021) (citing Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982) ("The burden of proof on venue under 28 U.S.C. § 1392(b) falls upon the defendant who challenges it."); Myers, 695 F.2d at 724 ("The venue issue[], unlike the [personal] jurisdictional issue, is not whether the court has authority to hear the case but simply where the case may be tried."). Additionally, even though the Court will not opine on the validity and scope of the arbitration provision in the Token Compensation Agreement because the Court lacks subject matter jurisdiction over Defendants to consider the substance of the parties' dispute, it is Defendants' position that no court is the proper forum.

Moreover, Plaintiff himself has not identified any other court in which his complaint could have been brought.  Arguably, California, Arizona, or Belize could be alternative forums, but the Court will not *sua sponte* consider whether those are forums "in which the action . . . could have been brought at the time it was filed."  See <u>Kim v. Korean Air Lines Co., Ltd.</u>, --- F. Supp. 3d. ---, 2021 WL 129083, at *5 (D.N.J. 2021) (citing <u>D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 107 (3d Cir. 2009)) (explaining that § 1631 requires a court to decide (1) whether the transferee court would have personal jurisdiction, and (2) whether a transfer is in the interests of justice).

Consequently, the Court is unable to transfer the action and will instead dismiss it for want of jurisdiction.

<u>**CONCLUSION**</u>

For the reasons expressed above, Defendants' motion to dismiss Plaintiff's amended complaint for lack of personal jurisdiction will be granted.  An appropriate Order will be entered.


Date:  April 1, 2021                s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.